


UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
APRIL ORR,

                     Plaintiff,

      -against-

The CITY OF NEW YORK, FRANCIS
JACKSON, PETER MENDEZ, and JOHN
MAGNANI,

                     Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**17-CV-03449 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff April Orr brings this action against the City of New York ("the City") and three New York City Police Officers—Francis Jackson, Peter Mendes, and John Magnani—in both their individual and official capacities. (Am. Compl. (Dkt. 14).) Plaintiff asserts claims of false arrest, supervisory liability, failure to intervene, and municipal liability pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. (Id. ¶¶ 13-43.) Defendants move for summary judgment on all claims. (Def. Mot. For Summ. J. ("Mot.") (Dkt. 24).) For the following reasons, Defendants' motion is GRANTED.

## I. BACKGROUND

### A. Facts[1]

The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the facts are in dispute, the court notes the disagreement and credits Plaintiff's version if it is supported by evidence in the record. All evidence is

---

[1] The court assumes the parties' familiarity with the factual background and sets forth here only those facts relevant to the disposition of this motion.

construed in the light most favorable to the non-moving party with all "reasonable inferences" drawn in its favor. ING Bank N.V. v. M/V Temara, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018).

On December 17, 2016, at approximately 8:31 PM, off-duty New York Police Sergeant James Wilson placed a phone call to 911 and reported that he was following a woman wearing a black coat, pants, and hat who had assaulted his wife. (Defs. Rule 56.1 Statement ("Defs. 56.1") (Dkt. 24-12) ¶ 1.)[2] Wilson reported that the woman was headed toward the Brighton Beach train station, a multi-story elevated subway station. (Id. ¶¶ 2-4.) The woman Wilson was following was Plaintiff April Orr. (Tr. of August 28, 2018 Dep. of Dwayne Cesar ("Cesar Dep.") (Dkt. 24-4) at 48:13-49:6.) Within a few minutes, Plaintiff entered the Brighton Beach train station, and Wilson followed her upstairs to the platform area. (Id.) In response to Wilson's call, a radio run was issued of an assault in progress at Brighton Beach train station. (Defs. 56.1 ¶ 6.) New York City police officers Francis Jackson, Peter Mendez, and John Magnani heard the run and responded to it. (Id.; Tr. of May 11, 2018 Dep. of John Magnani ("Magnani Dep.") (Dkt. 24-15) at 7:9-19.)

The parties dispute what happened next. According to Defendants, Officer Jackson met Wilson's wife at the base of the stairs leading up to the Brighton Beach station. (Id. ¶8.) Wilson's wife told Jackson that Plaintiff had pushed her, described Plaintiff as Wilson had described her, and pointed toward the stairs up into the station to indicate Plaintiff's current location. (Id. ¶¶ 9-10.) Then Jackson went up the stairs into the station, joining Mendez, Wilson, Plaintiff, and Cesar. (Id. ¶¶ 11,14.)

---

[2] Defendant's 56.1 Statement will be cited throughout, except where Plaintiff's 56.1 Statement disagrees.

2

Plaintiff claims, however, that Wilson's wife was not present. (Pl. Rule 56.1 Statement ("Pl. 56.1") (Dkt. 24-22) ¶ 8.) Plaintiff states that Jackson and Mendez arrived at Brighton Beach station and proceeded up the stairs and into the platform area before they encountered Wilson and briefly spoke with him. (Tr. of May 11, 2018 Dep. of Peter Mendez ("Mendez Dep.") (Dkt. 24-6) at 11:22-13:25; Cesar Dep. at 56:1-25; Tr. of May 9, 2018 Dep. of April Orr, ("Pl. Dep.") (Dkt. 24-17) at 51:11-17.)

Once Jackson and Mendez were on the platform, they spoke to Wilson before placing Plaintiff in handcuffs. (Defs. 56.1 ¶15.) Wilson repeated his claim that Plaintiff had assaulted his wife and identified himself as an off-duty New York City Police officer. (Defs. 56.1 ¶¶15-18.) The officers then spoke to Plaintiff, who had been joined on the platform by a co-worker, Dwayne Cesar. (Orr Dep. at 49:18-52:20.) Officer Mendez asked Plaintiff what had happened, and Plaintiff explained that she was a security guard at the nearby Master Theater, that she prevented Wilson's wife from impermissibly reentering the theater, and that Wilson had later grabbed her as she was trying to leave the theater. (Orr Dep. at 30:14-34:12, 45:16-46:18, 49:18-52:20; Mendez Dep. at 21:2-20.) Cesar also spoke to the officers and told them that Wilson had assaulted Plaintiff earlier in the evening. (Cesar Dep. at 59:9-25.) After speaking to Wilson, Plaintiff, and Cesar, the officers placed Plaintiff under arrest for assault in the third degree, handcuffed her, and transported her to the 60th Precinct of the New York City Police Department. (Defs. 56.1 ¶¶19-22.)

Plaintiff was held at the 60th Precinct for approximately three hours before being released with a desk appearance ticket. (Mendez Dep. at 31:9-32:4; Tr. of May 11, 2018 Dep. of Francis Jackson ("Jackson Dep.") (Dkt. 24-5) at 41:3-24.) The District Attorney's Office for Kings County ultimately declined to prosecute Plaintiff. (Declined Prosecution Letter (Dkt. 24-21).)

3

## B. Procedural History

Plaintiff filed her complaint against the City, Officer Jackson, and three John Doe defendants on June 8, 2017. (Compl. (Dkt. 1).) Defendants answered the complaint on September 5, 2017. (Answer (Dkt. 9).) Plaintiff filed an amended complaint on January 17, 2018 that replaced two of the Doe defendants with Officers Mendez and Magnani and removed the third Doe defendant. (Am. Compl.) The City and Jackson answered the amended complaint on January 31, 2018 (City & Jackson Answer to Am. Compl. (Dkt. 17), and Officers Mendez and Magnani answered on February 22, 2018 (Mendez & Magnani Answer to Am. Compl. (Dkt. 20)). Discovery proceeded before Magistrate Judge Robert Levy and closed on October 11, 2018. (October 11, 2018 Order.) With the permission of the court, Defendants filed their fully briefed motion for summary judgment on December 15, 2018. (See Mot.)

Defendants make four arguments in support of their motion. First, Defendants argue that Plaintiff's false arrest claim should be dismissed because there was probable cause for her arrest. (Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 24-13) at 5-12.) Second, Defendants contend that the arresting officers are entitled to qualified immunity because they acted based on, at a minimum, arguable probable cause. (Id. at 13-15.) Third, Defendants claim that Plaintiff's failure to intervene, supervisory liability, and municipal liability claims fail because there is no underlying constitutional violation. (Id. at 16.) Finally, Defendants aver that Plaintiff's municipal liability claims should be dismissed because there is no underlying constitutional violation and, alternatively, because Plaintiff has adduced no evidence to support her claim. (Id. at 16-17.)

Plaintiff opposes the motion. (See Mem. in Opp'n ("Opp'n") (Dkt. 24-23).)

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by demonstrating that the non-movant has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (alteration adopted) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

"To determine whether an issue is genuine, 'the inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" Mikhaylov v. Y & B Trans. Co., No. 15-CV-7109 (DLI), 2019 WL 1492907, at *3 (E.D.N.Y. Mar. 31, 2019) (alterations adopted) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). Nonetheless, the non-movant "may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) (citations omitted).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege (1) that some person has deprived her of a right, privilege, or immunity secured by the Constitution or laws of the United States and

5

(2) that the person who deprived her of the right was acting under color of state law. 42 U.S.C. § 1983; see Velez v. Levy, 401 F.3d 75, 84 (2d Cir. 2005) (citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)). Here, Plaintiff alleges that Defendants, acting under color of state law, deprived her of rights protected by the Fourth and Fourteenth Amendments to the U.S. Constitution. (Am. Compl. ¶ 42.) Plaintiff alleges specific causes of action for false arrest, failure to intervene, supervisorial liability, and municipal liability. The court considers each in turn.

### A. Plaintiff's False Arrest Claim

Courts analyzing § 1983 false arrest claims brought under the Fourth Amendment apply the law of the state in which the arrest occurred. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). In New York, a plaintiff must prove four elements to prevail on a false arrest claim: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Wright v. Musanti, 887 F.3d 577, 587 (2d Cir. 2018) (citing Broughton v. New York, 335 N.E.2d 310, 314 (N.Y. 1975)). "An arrest is privileged if it is supported by probable cause, which 'is an absolute defense to a false arrest claim.'" Heyliger v. Peters, 771 F. App'x 96, 97 (2d Cir. 2019) (summary order) (quoting Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006)).

Defendants argue that there was probable cause to arrest Plaintiff. (Mem. at 9.) "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis omitted) (citing

Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). In making its probable cause determination, the court should consider "the facts known to the arresting officer at the time of the arrest." Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (quoting Devenpeck v. Alford, 543 U.S. 146, 152 (2004)). "A law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." Feinberg v. City of New York, No. 99-CV-12127 (RC), 2004 WL 1824373, at *3 (S.D.N.Y. Aug. 13, 2004) (alteration adopted) (quoting Miloslavsky v. AES Eng'g Soc'y, Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992), aff'd, 993 F.2d 1534 (2d Cir. 1993)). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." Alvarado v. City of New York, 453 F. App'x 56, 58 (2d Cir. 2011) (summary order) (alteration adopted) (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). The probable cause inquiry is objective, and a court should not inquire into the subjective motivations of the arresting officers. Whren v. United States, 517 U.S. 806, 812-813 (1996). "At the summary judgment stage, the question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, or may require a trial if the facts are in dispute." Coggins v. Cty. of Nassau, 254 F. Supp. 3d 500, 515 (E.D.N.Y. 2017) (alteration adopted) (quoting Weyant, 101 F.3d at 852).

Here, drawing all inferences in favor of the Plaintiff, see Mikhaylov, 2019 WL 1492907, at *3, the relevant facts are as follows: Before Plaintiff was arrested, Defendants spoke only to Wilson, who identified himself as an off-duty New York City police officer. (Defs. 56.1 ¶15.) During their interaction, Wilson told Defendants that Plaintiff had pushed his wife. (Defs. 56.1 ¶15-18.) Although it is unclear from the record whether Wilson told Jackson and Mendez that he

7

had witnessed Plaintiff push his wife (Mendez Dep. at 26:21-25; 28:2-7), the court presumes that he told the officers that he was not an eyewitness but had spoken to the putative victim. When Jackson and Mendez later spoke to Plaintiff, she provided a different account. Plaintiff explained that she was a security guard at a nearby theater and that Wilson had assaulted her. (Orr Dep. 49:18-52:20; Mendez Dep. 21:2-20.) Plaintiff's statements were corroborated by her co-worker, who also spoke to Jackson and Mendez. (Cesar Dep. at 59:9-25.) Thus, Jackson and Mendez, in deciding to arrest Plaintiff, chose to disregard the firsthand statements of Plaintiff and her co-worker and rely on the secondhand report of Wilson.

These facts support a finding that there was probable cause to arrest Plaintiff. Applying an objective standard, see Shain v. Ellison, 273 F.3d 56, 56 (2d Cir. 2001), Jackson and Mendez were reasonable to rely on the report from their fellow officer, even though Sergeant Wilson was off duty at the time, and did not himself witness the altercation between his wife and Plaintiff.[3] (Defs. 56.1 ¶16.) Cf. Campanaro v. City of Rome, 999 F. Supp. 277, 280 (N.D.N.Y. 1998) (finding that arresting officers had probable cause based on report from off-duty officer).

Plaintiff argues that Jackson and Mendez did not have probable cause to arrest Plaintiff because the officers "did not have credible evidence from a person with knowledge of the facts." (Pl. Mem. in Opp'n to Defs. Mot. for Summ. J. ("Opp'n") (Dkt. 24-23) at 8.) This argument is unavailing. Jackson and Mendez acted reasonably when they choose to rely on Wilson's report because the law does not require an arresting officer to weigh the credibility of a potential arrestee's allegations against the allegations of the individual who provided probable cause

---

[3] This finding does not depend on Wilson telling the truth. If Wilson fabricated his report, as Plaintiff alleges, he would not have had probable cause to arrest Plaintiff. Regardless, Jackson and Mendez had no reason to believe that Wilson was not telling the truth, and so they "acted reasonably and in good faith in relying on" his report. Alvarado, 453 F. App'x at 58. They therefore had probable cause to make the arrest. See Campbell v. City of New York, No. 16-CV-7201 (NGG) (SMG), 2019 WL 569768, at *6 (E.D.N.Y. Feb. 11, 2019).

before making an arrest. See Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." (alteration adopted) (quoting Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir.2001)); Little v. Massari, 526 F. Supp. 2d 371, 375 (E.D.N.Y. 2007).

Police officers often receive conflicting reports from different individuals at the scene, and officers must make difficult decisions as to which report to trust in deciding whom to arrest. Curley, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.") All that the probable cause standard requires is that a reasonable person in the same situation as the officers could have made the same decision. Here, Jackson and Mendez acted reasonably when concluding that Wilson's report constituted "reasonably trustworthy information" that Plaintiff had committed a crime. Campbell, 2019 WL 569768, at *6 (quoting Weyant, 101 F.3d at 852). Therefore, Jackson and Mendez had probable cause to arrest Plaintiff after speaking with Sergeant Wilson.[4]

Plaintiff relies on District of Columbia v. Wesby, 138 S. Ct. 577 (2018) to argue that Jackson and Mendez did not have probable cause because they did not appropriately consider the accounts of Plaintiff and Cesar. (Opp'n at 9.) However, Wesby is not to the contrary of the foregoing analysis. Wesby states that "probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts." 138 S. Ct. at 588. Jackson and Mendez

---

[4] It is not necessary to this decision to find that Sergeant Wilson himself had probable cause to arrest Plaintiff. There is a dispute of fact as to whether Wilson's report to Officers Mendez and Jackson was honest. (See, e.g., Orr Dep. at 30:14-34:12, 45:16-46:18, 49:18-52:20; Mendez Dep. at 21:2-20.) However, Wilson is not a defendant in this action, and the court has not been presented with the question of whether Wilson violated Plaintiff's constitutional rights while acting under the color of state law. Here, it is sufficient that Mendez and Jackson did not have reason to believe that Wilson was lying, and, therefore, Wilson's report provided Mendez and Jackson with an objectively "reasonable basis for believing there [was] probable cause." Panetta, 460 F.3d at 396.

were not required to rule out Plaintiff's and Cesar's accounts of the incident before arresting Plaintiff based on Wilson's report. See Panetta, 460 F.3d at 396; Curley, 268 F.3d at 70.

Having established that the officers had probable cause, the court need not reach Defendants' qualified immunity argument. Also, because Plaintiff's false arrest claim fails, her due process claim also fails. Therefore, Defendants' motion for summary judgment on these claims is GRANTED.

### B. Failure to Intervene and Supervisorial Liability Claims

Plaintiff brings claims of supervisory liability and failure to intervene based on her underlying claim of false arrest. Because the court has granted summary judgment on the underlying constitutional violation, Defendants are also entitled to summary judgment on these claims. See Elek v. Inc. Vill. of Monroe, 815 F. Supp. 2d 801, 808 (S.D.N.Y. 2011) ("[B]ecause Plaintiff has not established any underlying constitutional violation, she cannot state a claim for § 1983 supervisor liability."); Feinberg, 2004 WL 1824373, at *4 (granting summary judgment on underlying false arrest claim required dismissal of failure to intervene claim). As a result, Defendants' motion for summary judgment on these claims is GRANTED.

### C. Municipal Liability Claim

Plaintiff also brings a municipal liability claim against the City for its alleged failures to hire and train its personnel. Because the court has granted judgment on the underlying false arrest claim, however, the City is entitled to summary judgment on this claim. See Askins v. Doe No. 1, 727 F.3d 248, 253 (2d Cir. 2013) ("Unless a plaintiff shows that he has been the victim of a federal law tort committed by persons for whose conduct the municipality can be responsible, there is no basis for holding the municipality liable.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' (Dkt. 24) motion for summary judgment is GRANTED. The Clerk of Court is respectfully DIRECTED to enter judgment and close the case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
December 12, 2019

NICHOLAS G. GARAUFIS
United States District Judge